UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOEL LOPEZ LLAMAS,

Petitioner,

v.

JULIO HERNANDEZ, *et al.*,

Respondents.

Case No. C26-2819-MLP

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Joel Lopez Llamas is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He has filed, through counsel, a petition for writ of habeas corpus under 28 U.S.C. § 2241 asserting that his July 7, 2026 re-detention, after having been previously released into the United States in 2015, violated his due process rights under the Fifth Amendment. (Dkt. # 1.) Petitioner submitted a declaration in support of his petition. (Dkt. # 1-2 ("Llamas Decl.").) Respondents filed a timely return to the petition (dkt. # 10), together with supporting declarations from ICE Deportation Officer Arias Subero (dkt. # 11 ("Subero Decl.")), and Respondents' counsel, Jennifer Wong (dkt. # 12 ("Wong Decl.")). Petitioner filed a timely traverse in reply to Respondents' return. (Dkt. # 13.) The Court, having reviewed the parties' submissions and the

governing law, GRANTS in part Petitioner's habeas petition (dkt. # 1).

## I. BACKGROUND

Petitioner is a native and citizen of Mexico who left Mexico with his family in 2015 after being threatened and beaten by a cartel for refusing to work for them. (Dkt. # 1, ¶ 24; Llamas Decl., ¶ 1.) On February 13, 2015, Petitioner and his family—including his wife and two young children—presented themselves at the Bridge of Americas Port of Entry in El Paso, Texas, and applied for admission by requesting asylum. (Dkt. # 1, ¶ 25; Llamas Decl., ¶ 2; Subero Decl., ¶ 4; Wong Decl., Ex. 1 at 2.) Petitioner was detained by U.S. Customs and Border Protection and transported to the El Paso Service Processing Center where he was processed for expedited removal/credible fear. (*See id.*) On February 17, 2015, Petitioner was released on parole pursuant to Section 212(d)(5) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1182(d)(5), pending a credible fear interview. (Subero Decl., ¶ 5.) As a condition of his release, Petitioner was required to report to ICE on a regular basis. (*Id.*) According to Petitioner, he was originally directed to go to monthly check-ins, which he did from approximately 2015 to 2017. (Llamas Decl., ¶ 3.) He was thereafter told he only had to check-in every three months, and then every six months. (*Id.*) Approximately four years ago, he was told he no longer had to attend any ICE check-ins. (*Id.*, ¶ 4.)

In September 2015, United States Citizenship and Immigration Services ("USCIS") made a positive credible fear determination and issued a Notice to Appear ("NTA") charging Petitioner as removable under INA § 212(a)(7)(A)(i)(I), codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I). (Subero Decl., ¶ 6; Wong Decl., Ex. 2.) In 2016, Petitioner filed an application for asylum and withholding of removal. (Llamas Decl., ¶ 5.) Officer Subero avers that Petitioner also applied for relief with the Seattle immigration court in January 2019, though he does not identify the nature

of the relief sought. (Subero Decl., ¶ 7.) In May 2022, an immigration judge ("IJ") dismissed Petitioner's removal proceedings on motion of the Department of Homeland Security ("DHS") because Petitioner and his family did not fall into enforcement priority categories at that time. (*Id.*) Petitioner opposed the motion to dismiss on the grounds that he wanted the court to adjudicate his claim for relief. (*Id.*, ¶ 8.)

On July 7, 2026, ICE's Office of Enforcement and Removal Operations ("ERO") fugitive enforcement operations "encountered" Petitioner in the Petco parking lot in Moses Lake. (Llamas Decl., ¶ 12; Subero Decl., ¶ 9.) According to Petitioner, on the morning of his arrest he and his wife had driven to Petco to buy dog food and were sitting in their car in the parking lot when they were approached by two plainclothes individuals wearing face coverings. (Llamas Decl., ¶ 12.) The masked individuals knocked on the car window and asked Petitioner to identify himself, but he did not respond because he did not know who they were. (*Id.*) A short time later, two individuals wearing ERO vests approached the car, asked for Petitioner's name, and told him to exit the vehicle or they would break his windows. (*Id.*) Petitioner complied with their directives and asked if they had a warrant or court order for his detention. (*Id.*) The ERO officers advised that they had an arrest warrant. (*Id.*) Officer Subero similarly avers that ERO Yakima had a warrant for Petitioner's arrest (Subero Decl., ¶ 9), though no such warrant has been produced and, indeed, no documentation whatsoever has been submitted detailing Petitioner's July 2026 arrest. Following his arrest, Petitioner was transferred to the Wenatchee ICE office for processing, and was served with an NTA charging him as removable under INA § 212(a)(6)(A)(i). (Subero Decl., ¶ 10.) Later the same afternoon, Petitioner was transported to NWIPC where he remains detained. (*Id.*, ¶¶ 11-12; Llamas Decl., ¶¶ 16, 18.)

Petitioner filed the instant petition on August 8, 2026, and he identifies therein a single ground for relief asserting that his re-detention violated the Due Process Clause of the Fifth Amendment. (Dkt. # 1, ¶¶ 57-60.) He seeks immediate release from confinement subject to his most recent pre-detention conditions of release. (*Id.* at 15.) Petitioner also requests that Respondents be permanently enjoined from re-detaining him during the pendency of his removal proceedings absent written notice and a hearing prior to his re-detention. (*Id.*) He further requests that Respondents be directed to return any personal property in their possession, including personal identification documents other than a passport, upon his release from confinement. (*Id.* at 15-16.) Respondents argue in response to the petition that Petitioner is lawfully detained under 8 U.S.C. § 1226(a) and that his re-detention dix not violate due process. (*See generally* dkt. # 10.)

## II. LEGAL STANDARDS

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

### A. Statutory Detention Authority

There is no dispute that Petitioner is currently detained under 8 U.S.C. § 1226(a). Section 1226 establishes a discretionary detention framework and is the "default rule" for detaining and removing noncitizens who are "already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Under § 1226(a), for a noncitizen who is "arrested and detained" "[o]n a warrant issued by the Attorney General," the Attorney General (1) "may continue to detain" the arrested noncitizen, (2) "may release" the noncitizen on "bond," or (3) "may release" the noncitizen on "conditional parole." 8 U.S.C. §§ 1226(a)(1)-(2). When a noncitizen is arrested and taken into immigration custody pursuant to § 1226(a), ICE makes an initial custody determination. *See* 8 C.F.R. § 236.1(c)(8). After the initial custody determination, the detainee may request a bond redetermination by an immigration judge. 8 C.F.R. § 236.1(d)(1).

Respondents argue that the procedural protections provided under § 1226(a) and its implementing regulations satisfy due process and are all the process Petitioner is due here. (*See* dkt. # 10 at 4-5.) Respondents further argue that Petitioner has not utilized the procedures available to him; in particular, he has not requested a bond redetermination hearing before an immigration judge. (*Id.* at 5.) Respondents contend that Petitioner should not be permitted to bypass the administrative process, a process that could lead to the relief he seeks here, *i.e.*, release from custody.[1] (*See id.*)

The Court first observes that Respondents have submitted no evidence demonstrating Petitioner was provided the process due under § 1226(a) and its implementing regulations.

[1] Respondents also present an exhaustion argument in their return (dkt. # 10 at 8-10) which the Court addresses below.

Officer Subero avers that Petitioner was arrested pursuant to a warrant (Subero Decl., ¶ 9), and Petitioner acknowledges that he was told by officers at the time of his arrest that they had a warrant (Lopez Llamas Decl., ¶¶ 12, 15), but Respondents have not produced the warrant nor, in fact, have they produced any documentation providing details about Petitioner's arrest, details which would typically be recorded on a Form I-213. Respondents have produced a Form I-213 in relation to Petitioner's initial arrest in February 2015 (*see* Wong Decl., Ex. 1), but have produced no such form in relation to Petitioner's July 2026 arrest. Also absent from the record is any evidence that Petitioner was afforded an individualized custody determination upon his arrest as called for in 8 C.F.R. § 236.1(c)(8). Without evidence demonstrating Petitioner was afforded the process Respondents acknowledge would have been due under § 1226(a), their statutory argument necessarily fails.

Moreover, even assuming Petitioner was afforded such process, this does not answer the question presented in the petition, *i.e.*, whether Petitioner's re-detention by ICE, after having been previously detained and released on conditions, comported with due process. (*See generally* dkt. # 1.) The Court now turns to Petitioner's due process claim.

**B. Due Process**

The Fifth Amendment's Due Process Clause forbids the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. Due process rights extend "to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' . . . interests within the meaning of the Due Process Clause of the Fifth . . . Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental

requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

Courts in this District apply the *Mathews* framework in cases challenging the lawfulness of a noncitizen's re-detention. *See, e.g., E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases employing the *Mathews* factors in similar immigration contexts). Petitioner argues that the Court should apply the *Mathews* framework here, as it has in numerous other cases involving noncitizens who were previously released from immigration custody and then re-detained, and should find that he is entitled to release. (*See* dkt. # 1, ¶¶ 39-49.)

Respondents argue that the Court should not treat this as a case involving "re-detention" because the removal proceedings initiated against Petitioner at the time he first entered the country in 2015 were dismissed and the conditional release afforded him in conjunction with those proceedings was terminated as well. (Dkt. # 10 at 5-6.) Thus, according to Respondents, Petitioner was entitled to no more process at the time of his arrest than a noncitizen would have been entitled to upon initial detention. (*Id.*) This position has been rejected by other courts in this District. In *Lima Gamez v. Hernandez*, 2026 WL 1382362. (W.D. Wash. May 18, 2026), the court addressed a similar argument to the one presented here, and concluded as follows:

> The Court finds little sense in the proposition that, merely because the government dismissed removal proceedings against Petitioner and released him with no restrictions, he is less entitled to procedural protection than would be a petitioner who remains in active removal proceedings and is subject to conditional release. As Petitioner correctly points out, "Respondents' theory would permit DHS to erase any noncitizen's liberty interest and due process protections by moving to dismiss their prior proceedings, *see* 8 C.F.R. § 239.2(a), (c), and filing a new Notice to Appear."

*Id.* at *5; *see also Yu v. Hernandez*, 2026 WL 1560581, at *8 (W.D. Wash. May 22. 2026) (adopting the reasoning of *Lima Gamez*). The Court finds the reasoning in these cases persuasive and therefore rejects Respondents' argument that the instant action should not be treated as a re-detention case. The Court further finds that the *Mathews* test is applicable here and addresses the three factors below.

*1. Private Interest*

The Court first considers Petitioner's private interest. The Supreme Court has consistently recognized the significance of an individual's interest in freedom from detention, *see Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."), *Hamdi*, 542 U.S. at 529 (the interest in not being detained "is the most elemental of liberty interests").

Respondents acknowledge the "weighty liberty interests implicated by the Government's detention of noncitizens." (Dkt. # 10 at 7 (quoting *Reyes v. King*, 2021 WL 3727614, at *11 (S.D.N.Y. Aug. 20, 2021)).) However, they then go on to make a relatively generic, and apparently contrary, argument that Petitioner's liberty interest in remaining out of custody is reduced by virtue of the fact that he is a noncitizen. (*Id.* (citing *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976) and *Denmore v. Kim*, 538 U.S. 510 (2003)).) The Court finds this argument both unhelpful and unpersuasive.

When Petitioner was released from custody in February 2015, he took with him a liberty interest entitled to the full protection of the Due Process Clause. The record shows that following his release, Petitioner settled with his family in Moses Lake, Washington, where they have resided for the past eleven years, he has worked for the same employer over the course of those eleven years, and he is an active member of his local church, thus demonstrating his substantial reliance on the freedom he was afforded in 2015. (*See* Lopez Llamas Decl., ¶¶ 7-10.) The first *Mathews* factor thus favors Petitioner.

*2. Risk of Erroneous Deprivation*

The Court next considers the risk of an erroneous deprivation and the value of additional safeguards. Respondents argue that the risk of a constitutionally significant deprivation of Petitioner's liberty without a pre-detention hearing is minimal here because he is subject to discretionary detention under § 1226(a) and the procedural protections of that statute are available to him, including a bond hearing. (Dkt. # 10 at 7-8) However, as courts in this district have explained "a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty." *E.A. T.-B.*, 795 F. Supp. at 1324; *Lucena-Ojeda v. Noem*, 2026 WL 279353, at *2 (W.D. Wash. Feb. 3, 2026) ("[A] post-deprivation bond hearing is an inadequate procedural safeguard because it would occur only after detention and thus fails to address an erroneous deprivation of liberty.")

Moreover, Respondents represent to the Court that Petitioner was paroled into the United States under INA § 212(d)(5) (Subero Decl., ¶ 5), which necessarily means DHS found he was neither a danger to the community nor a flight risk at the time of his release. *See* 8 C.F.R. § 212.5(b). Petitioner apparently remained on parole until at least May 2022 when his initial immigration case was dismissed (*see* dkt. # 10 at 6), and there is no evidence that Petitioner

failed to comply with any of the requirements of his release during that period. Petitioner was released without conditions in May 2022 upon the termination of his removal proceedings by an immigration judge, implying that he was not deemed a flight risk or a threat to the public at that time either. To re-detain Petitioner over four years later without first considering those factors posed a high risk of an erroneous deprivation. *See E.A. T.-B.*, 795 F. Supp. 3d at 1323 (collecting cases).

This conclusion is bolstered by the fact that Petitioner has no criminal history and there is absolutely no evidence Petitioner presents a risk of flight. Additional safeguards would have permitted appropriate consideration of all relevant factors and would have decreased the risk of arbitrary or otherwise unlawful detention. Thus, the second *Mathews* factor also favors Petitioner.

*3. Governmental Interest*

Finally, the Court considers the government's countervailing interests. There is no question that the government has legitimate interests in enforcing immigration laws, protecting the community, and ensuring a noncitizen's appearance for immigration proceedings. Respondents, however, identify no concrete way in which providing a brief pre-deprivation process would materially impede those interests. Custody and bond hearings are routine, and courts have found the incremental burden modest compared to the risk and consequences of erroneous detention. *See*, *e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019).

In sum, all three *Mathews* factors favor Petitioner and habeas relief is therefore warranted. Given the lack of lawful process prior to detention and the absence of exigent circumstances, release is the appropriate and constitutionally required remedy.

**C. Exhaustion**

Respondents also argue in their return that Petitioner failed to exhaust his administrative remedies through the procedural protections available under § 1226(a). (Dkt. # 10 at 8-10.) Exhaustion in the context of immigration habeas petitions is prudential rather than jurisdictional. *Lima Gamez*, 2026 WL 1382362, at * 5. Courts may require exhaustion as a prudential matter when: (1) "agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision, (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme, and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (citation omitted). Even if the *Puga* factors weigh in favor of prudential exhaustion, the exhaustion requirement may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (quotations marks and citation omitted).

Respondent has not demonstrated that any of the *Puga* factors weigh in favor of exhaustion here. The primary issue before the Court is not whether Petitioner is lawfully detained under § 1226(a), but whether his re-detention comported with due process. The administrative process would not address the constitutional propriety of Petitioner's re-detention and requiring administrative exhaustion would therefore be futile.

**D. Injunctive Relief**

In addition to his request for release, Petitioner also seeks an order directing Respondents to return any personal property in their possession, and a permanent injunction barring Respondents from re-detaining him without written notice and a prior hearing at which

Respondents must prove, by clear and convincing evidence, that he is a flight risk or danger and that no alternative will suffice. (Dkt. # 1 at 15.) To obtain a permanent injunction, a party must show "some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Although Petitioner has shown his re-detention was unlawful, the present record does not establish a specific, real, and immediate threat of future re-detention without process. Petitioner's request for injunctive relief is therefore denied without prejudice.

## III. CONCLUSION

Based on the foregoing, the Court ORDERS as follows:

(1) Petitioner's petition for writ of habeas corpus (dkt. # 1) is GRANTED in part. Respondents shall release Petitioner from immigration detention within **twenty-four (24) hours**, subject to his most recent pre-detention conditions of release, and shall return to him any personal property, including personal identification documents other than a passport.

(2) Respondents shall file a status report with the Court confirming Petitioner's release within **two (2) business days**.

(3) Petitioner's remaining request for injunctive relief is DENIED without prejudice.

(4) The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412. The parties are reminded of the meet-and-confer requirement under this Court's chambers procedures.

(5) The Clerk shall direct copies of this Order to all counsel of record.

DATED this 10th day of September, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge